```
                                                                              FILED
              UNITED STATES DISTRICT COURT                                   OCT 0 1 2013
                 DISTRICT OF SOUTH DAKOTA
                    SOUTHERN DIVISION
```

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR. 13-40058 |
| Plaintiff, | |
| vs. | REPORT and RECOMMENDATION |
| BRANDON GUSTAV MCGUIRE, | (Motion to Suppress, Doc. 24) |
| Defendant. | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Pending is Defendant's Motion to Suppress Evidence (Doc. 24). A hearing was held on Thursday, September 12, 2013. Defendant was personally present and represented by his counsel of record, Assistant Federal Public Defender Jason Tupman. The Government was represented by Assistant United States Attorney Jennifer Mammenga. Four witnesses testified at the hearing: ATF Special Agent Emmet Warkenthien; Sioux Falls Police Detective Terry Matia, Sioux Falls Police Officer John Duprey and Mr. McGuire's former landlord, Michael Parham. Nineteen exhibits were received into evidence. Additionally, both parties have submitted briefs and oral argument was heard at the conclusion of the hearing. Based on a careful consideration of all of the evidence, and counsel's written and oral arguments, the Court respectfully makes the following:

## RECOMMENDATION

It is respectfully recommended that Defendant's Motion to Suppress be **DENIED**.

## JURISDICTION

Defendant is charged in an Indictment with Possession of a Firearm by a Prohibited Person in violation of 18 U.S.C. § 922(g)(3). The pending Motion to Suppress was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Judge Schreier's Standing Order dated March 18, 2010.

## FACTUAL BACKGROUND

This dispute is all about trash. The Defendant, Brandon McGuire ("McGuire") claims law enforcement illegally searched his trash, resulting in an illegal search of his home. The government

claims both the trash searches and the search of McGuire's home were legal.

On October 16 and October 23, 2012, the Sioux Falls Police Department conducted trash pulls from the trash cans located at a duplex owned by Michael Parham and rented by McGuire. Incriminating items were found in McGuire's trash. On October 30, 2012, McGuire's duplex was searched pursuant to a search warrant. Drugs, drug paraphernalia, and firearms were found. McGuire was initially charged in state court with drug-related crimes. Subsequently, in May, 2013, McGuire was indicted on federal firearms charges. McGuire moves to suppress "any and all evidence obtained by the government during the seizure of his trash on October 16th and 23rd 2012 and the evidence seized during the search of his home on or about October 30, 2012." McGuire asserts that the seizures and searches violated the Fourth Amendment because "the affidavit in support of the search warrant omitted facts essential to the magistrate's determination of probable cause" and were "omitted with reckless disregard."[1] McGuire also asserts the trash pulls on October 16 and 23 violated his Fourth Amendment rights.[2]

The testimony of the witnesses who testified during the evidentiary hearing is summarized below. Reference is made to the exhibits throughout the Report and Recommendation as necessary.

### Michael Parham

Mr. Parham owns the duplex located at 100 N. Van Eps Avenue in Sioux Falls, South Dakota. On October 16 and October 23, 2012 one half of the duplex was rented to McGuire. McGuire had a guest staying with him in the duplex at the time. The other side of the duplex was temporarily empty during the week the trash pulls occurred because Parham was between renters

---

[1] A state court judge (the Honorable William Srstka) from the Second Judicial Circuit in Minnehaha County, South Dakota issued the warrant. McGuire attached a copy of Terry Matia's supporting affidavit to his brief as Doc. 25-2.

[2] McGuire asserts facts essential to the Magistrate Judge's determination of probable cause were omitted from the search warrant application so he requested a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). The pertinent witnesses testified at the suppression hearing. Because there is nothing further to be gained from a *Franks* hearing, McGuire's motion for a *Franks* hearing is denied as MOOT.

after one tenant moved out. The other side of the duplex was empty for about one week.

Parham contacted Detective Matia with the Sioux Falls Police Department at the beginning of September, 2012. Parham had received complaints from neighbors indicating they believed McGuire was dealing drugs from the duplex. The neighbors reported large amounts of traffic at odd hours. Parham also reported that he saw what he believed to be drugs in the duplex when he was inside to perform repairs. He saw a bag of marijuana on the top of the refrigerator. He also saw something in the basement he believed was used to manufacture drugs. It was a can on top of a burner that appeared to be some sort of still. Detective Matia asked Parham for permission to conduct a trash pull. Parham told Matia that he (Parham) paid for trash removal at the duplex and that Craig's Sanitation provided the trash removal at the duplex. Parham gave Matia permission to perform a trash pull.

Although McGuire was the only tenant at the time, the trash cans at the duplex are normally shared between the two units. Exhibit 15 depicts a wooden structure that was placed by Parham. He placed the cans in the wooden structure to prevent the cans from blowing away. Exhibit 4 depicts the property line between the duplex and the neighbor's driveway. The garbage cans sit approximately four inches from the neighbor's driveway. Exhibit 6 depicts a public street in the foreground. It also depicts the neighbor's house and driveway on the right, and the trash cans from the duplex where the trash pull in question occurred. McGuire had exclusive use of the garage. The other tenant did not use the garage. Craig's Sanitation backs into the neighbor's driveway to pick up the garbage.

Parham had access to the yard, his storage shed in the back yard behind the garage, and the garbage cans whenever he wished, without notice. McGuire's lease required twenty-four hour notice for Parham to enter the inside of the residence. McGuire did not object to Parham's access to the yard or his storage shed without notice. Parham put items in the duplex trash cans in McGuire's presence without objection from McGuire when Parham used his own storage shed. McGuire had exclusive access to his half of the duplex and the garage, but Parham and both tenants had access to the yard and the garbage cans.

3

**Special Agent Emmet Warkenthien**

Agent Warkenthien is an agent with the Bureau of Alcohol, Tobacco and Firearms. He took the photos that are Exhibits 1-15. They depict the duplex, street, sidewalk and neighboring property at 100 N. Van Eps Street in Sioux Falls, South Dakota.

**Sioux Falls Police Detective Terry Matia**

Detective Matia is a police officer with the City of Sioux Falls. He was involved in the investigation of McGuire. He received an anonymous Crime Stoppers tip indicating McGuire was involved in selling methamphetamine. The tip indicated the methamphetamine was kept on top of the refrigerator in McGuire's residence. Matia also received a call from McGuire's landlord, Michael Parham. Parham told Matia that he'd seen drugs on top of the refrigerator while inside McGuire's residence performing maintenance. Parham also told Matia that neighbors expressed concerns that McGuire was selling drugs from the residence.

Matia asked Parham for permission to conduct a trash pull. Parham granted permission and provided information about which company provided trash service and which day was trash day for the duplex. Matia asked for assistance from a fellow officer (Duprey) because Matia was going to be out of town on the first day (October 16) planned to conduct a trash pull at 100 N. Van Eps. Matia personally conducted the second trash pull on October 23.

On the evening Matia conducted the trash pull, he accessed the trash cans by crossing the neighbor's lawn to the neighbor's driveway. He took the most direct route and he wished to avoid being seen by McGuire for officer safety purposes. Matia estimated the trash cans were five to seven paces or fifteen to twenty feet from the street. The lids were tied to the cans to keep them attached. He took the lids off the trash cans but did not untie them from the cans. He removed the bags from the cans. The bags were tied shut. He followed his usual procedure for trash pulls. It is not his usual procedure to work with the sanitation companies. Sioux Falls City ordinances require people to place their garbage containers in an inconspicuous place next to the structure, reasonably accessible to the garbage hauler.

Detective Matia applied for and received a search warrant for the duplex at 100 N. Van Eps. He was involved in the search of the duplex. Drugs, drug paraphernalia and weapons were found.

### Sioux Falls Police Officer John Duprey

John Duprey has been a Sioux Falls police officer for nineteen years. He was involved in the investigation of Mr. McGuire. He conducted a trash pull at approximately 10:00 p.m. on October 16, 2012 at 100 N. Van Eps. He recovered a document with McGuire's name on it and a small baggie with methamphetamine residue. He walked across the neighbor's yard, into the neighbor's driveway to the trash cans. The lids were on the trash cans. He knew he was on private property. He did not have permission to walk across the neighbor's property. He reached into the cans, grabbed the bags and threw them into the bed of the pick up they were driving that evening. They do not want to be seen because they do not want to disrupt the investigation. Additionally, they do not want a confrontation for officer safety reasons. He was involved in the search of 100 N. Van Eps Avenue. Drugs, drug paraphernalia and guns were seized.

## DISCUSSION

### Burden of Proof

The burden of proof is on the defendant who seeks to suppress evidence. *United States v. Phillips*, 540 F.2d 319 (8th Cir.1976). "A movant seeking to suppress evidence under a regularly issued warrant has the burden to show that the warrant was issued without probable cause." *United States v. Sierra-Garcia*, 760 F.Supp. 252, 262 (E.D.N.Y. 1991) (citations omitted). The standard of proof is a preponderance of the evidence. *Lego v. Twomey*, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972).

McGuire urges three reasons to suppress the evidence found as a result of the search warrant executed at 100 N. Van Eps: (1) He had a reasonable expectation of privacy in his trash (2) Law enforcement trespassed onto the property to obtain the trash, therefore the trash pull constituted an illegal search; and (3) There was no probable cause to issue the search warrant because Detective Matia recklessly omitted crucial information from his supporting affidavit. These three arguments are discussed (out of order) below:

5

## 1. The Search Warrant Remains Valid Without the Trash Evidence

McGuire theorizes Matia recklessly disregarded the truth when preparing the search warrant affidavit. McGuire asserts Detective Matia failed to accurately explain the location of the trash cans at 100 N. Van Eps in an effort to mislead Judge Srstka because Matia wanted to include the trash evidence in the affidavit. McGuire opines that in the absence of Matia's reckless disregard, Judge Srstka would have deemed insufficient probable cause to issue the search warrant.

> Under *Franks* and its progeny, a defendant may challenge a search warrant on the grounds that the probable cause determination relied on an affidavit containing false statements or omissions made knowingly and intentionally or with reckless disregard for the truth. To obtain a *Franks* hearing, a defendant must make a substantial preliminary showing that there was an intentional or reckless false statement or omission which was necessary to the finding of probable cause, a requirement which is 'not easily met.' Thus, to prevail on a *Franks* claim the defendant must first demonstrate that the law enforcement official deliberately or recklessly included a false statement in, or omitted a true statement from, his warrant affidavit. The defendant must then show that the affidavit would not establish probable cause if the allegedly false information is ignored or the omitted information is supplemented. Allegations of negligence or innocent mistake will not suffice to demonstrate reckless or deliberate falsehood.

*United States v. Snyder*, 511 F.3d 813, 815 (8th Cir. 2008)(citations omitted).

Related to the *Franks* analysis and for purposes of this section only, it will be assumed that the trash pulls constituted an unlawful search. "[W]arrant affidavits that contain information from an unlawful search are evaluated by deleting that information." *United States v. Hernandez Leon*, 379 F.3d 1024, 1026 (8th Cir. 2004). If after deleting the information acquired from a potentially unlawful search from the supporting affidavit it is nevertheless sufficient to establish probable cause, the warrant remains valid. *United States v. Templeman*, 938 F.2d 122, 124-25(8th Cir. 1991); *United States v. Packer*, 730 F.2d 1151, 1156 (8th Cir. 1984). It does not appear this analysis was undertaken at the state court level. Although it is a very close call, excision of the trash evidence from Matia's affidavit does not negate probable cause.

"Probable cause is a fair probability that contraband or evidence of a crime will be found in the location searched." *United States v. LaMorie*, 100 F.3d 547, 552 (8th Cir. 1996)(citation omitted). "The standard of probable cause for the issuing judge is whether, given the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a

6

particular place." *Walden v. Carmack*, 156 F.3d 861, 870 (8th Cir. 1998) (citations omitted). Probable cause is a "fluid concept--turning on the assessment of probabilities in particular factual contexts--not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

When the issuing judge relies solely upon the supporting affidavit of the law enforcement officer seeking the warrant, only that information found within the four corners of the affidavit may be considered in determining the existence of probable cause. *United States v. Etheridge*, 165 F.3d 655, 656 (8th Cir. 1999) (citations omitted). Whether an affidavit is sufficient to support a probable cause finding to issue a warrant is determined by considering the totality of the circumstances presented. *Illinois v. Gates*, 462 U.S. at 230. Sufficiency of the affidavit is not determined by a piecemeal approach, and the elements of the affidavit should not be read in isolation. *United States v. Sumpter*, 669 F.2d 1215, 1218 (8th Cir. 1982). "Applications and affidavits should be read with common sense and not in a grudging, hyper technical fashion." *United States v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). A probable cause finding may be based upon hearsay from reliable persons, independently corroborated hearsay statements from confidential informants, and observations made by trained law enforcement officers. *Walden v. Carmack*, 156 F.3d at 870 (citations omitted). Once a judge has issued a warrant upon a finding of probable cause, that finding deserves great deference. Therefore, the inherent assumption that the supporting affidavit is sufficient to provide probable cause is likewise accorded great deference. *Illinois v. Gates*, 462 U.S. at 236; *Walden v. Carmack*, 156 F.3d at 870. "Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *United States v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed. 2d 684 (1965)(citation omitted).

"The credibility and reliability of a person providing information to the police are important factors to be considered. They are not, however, separate and independent requirements to be rigidly exacted in every case." *United States v. LaMorie*, 100 F.3d 547, 553 (8th Cir. 1996)(citations omitted). Also, if some information from an informant is shown to be reliable because of

7

corroboration, it is a permissible inference that other, uncorroborated information is also reliable. Here, the officers received information from an anonymous Crime Stoppers call. The Crime Stoppers informant told Detective Matia that McGuire was selling methamphetamine at 100 N. Van Eps, that the drug activity occurred in the early morning hours, and that McGuire kept his drugs on the top of his refrigerator. Matia checked Sioux Falls police records and confirmed McGuire resided at 100 North Van Eps. An additional informant (landlord Parham) contacted Detective Matia to report that neighbors complained about McGuire selling drugs. Parham also reported that while conducting maintenance inside the duplex, he (Parham) personally observed a bag of marijuana on top of McGuire's refrigerator. While the affidavit contains no information about Parham's veracity, Parham provided mutually corroborative information to the Crime Stoppers tip. *See United States v. Warner*, 894 F.2d 957, 960 (8th Cir. 1990) and *United States v. Jackson*, 898 F.2d 79, 81 (8th Cir. 1990) (anonymous citizen's tip that marijuana plants were growing inside defendant's house corroborated by officer checking utility records to confirm defendant's name and residence sufficient to establish probable cause).

An anonymous tip standing alone is insufficient to establish probable cause. *United States v. Wells*, 223 F.3d 835 (8th Cir. 2000). When a Crime Stoppers tip is accompanied by corroboration that exhibits sufficient indicia of reliability, however, the Crime Stoppers tip can provide adequate probable cause. *Id.* at 839-40. Sufficient indicia of reliability can be shown by "firsthand information or intimate details that could provide a reliable basis for [the] purported knowledge." *Id.*

In McGuire's case, the Crime Stoppers tip told Matia McGuire was dealing drugs from 100 N. Van Eps, that the transactions occurred in the early morning hours, and that McGuire stored his drugs on top of the refrigerator. This anonymous information standing alone would have been insufficient. But probable cause is established when coupled with the first hand corroborating information from landlord Parham that (1) Neighbors had been complaining about McGuire's drug dealing activities; and (2) Parham, while inside the duplex performing repairs, saw McGuire's drug

stash on top of the refrigerator.³ Even assuming therefore, that the trash pulls constituted illegal searches, the search warrant which resulted in the discovery of drugs, drug paraphernalia and firearms at 100 N. Van Eps was valid.

## 2. McGuire's Expectation of Privacy

Any discussion of McGuire's expectation of privacy in his trash must begin with the United States Supreme Court's discussion in *California v. Greenwood*, 486 U.S. 35, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988). In *Greenwood*, the issue was whether the Fourth Amendment prohibited the warrantless search and seizure of trash left for collection outside the curtilage of a home. In *Greenwood* the trash was left curbside for collection in front of the house. The police retrieved the bags from the trash collector, searched them, and found incriminating evidence.

> The warrantless search and seizure of the garbage bags left at the curb outside the Greenwood house would violate the Fourth Amendment only if respondent's manifested a subjective expectation of privacy in their garbage that society accepts as objectively reasonable.
>
> They assert, however, that they had, and exhibited, an expectation of privacy with respect to the trash that was searched by the police: The trash, which was placed on the street for collection at a fixed time, was contained in opaque plastic bags, which the garbage collector was expected to pick up, mingle with the trash of others, and deposit at the garbage dump. The trash was only temporarily on the street, and there was little likelihood that it would be inspected by anyone.
>
> It may well be that respondents did not expect that the contents of their garbage bags would become known to the police or other members of the public. An expectation of privacy does not give rise to Fourth Amendment protection, however, unless society is prepared to accept that expectation of privacy as objectively reasonable.
>
> Here, we conclude that respondents exposed their garbage to the public sufficiently to defeat their claim to Fourth Amendment protection. It is common knowledge that plastic garbage bags left on or at the side of a public street are readily accessible to animals, children, scavengers, snoops and other members of the public. Moreover,

---

³This is not to say that without the trash evidence Matia's affidavit presents the strongest probable cause for a search warrant ever reviewed by this Magistrate Judge. Quite the contrary, it is the weakest. But it would pass muster if that is all the probable cause there was. Parham testified during the suppression hearing that while performing repairs in the duplex, he also observed a contraption resembling a still in the basement at 100 N. Van Eps. This observation, however, was not recited in Matia's affidavit so it is not considered for purposes of the probable cause determination.

> respondents placed their refuse at the curb for the express purpose of conveying it to a third party, the trash collector, who might himself have sorted through respondents' trash or permitted others, such as the police, to do so. Accordingly, having deposited their garbage in an area particularly suited for public inspection and, in a manner of speaking, public consumption, for the express purpose of having strangers take it, respondents could have no reasonable expectation of privacy in the inculpatory items that they discarded.
>
> Furthermore, as we have held, the police cannot reasonably be expected to avert their eyes from evidence of criminal activity that could have been observed by any member of the public. Hence, what a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.

*Id.* 486 U.S. at 40-41, 108 S.Ct. at 1628-29 (citations omitted, punctuation altered). In the ensuing years *Greenwood* has been applied and interpreted to comparable trash cases by the various courts of appeal. In *United States v. Comeaux*, 955 F.2d 586 (8th Cir. 1992) the defendant attempted to distinguish his trash case from *Greenwood* because his trash was inside the curtilage. The Eighth Circuit was not persuaded:

> However, even assuming that the garbage cans were within the curtilage, we find [defendant's] claim to be without merit. We believe that the proper focus under *Greenwood* is whether the garbage was readily accessible to the public so as to render any expectation of privacy objectively unreasonable.... In this case, the garbage was readily accessible to the public. Testimony at [defendant's] suppression hearing and the trial demonstrates that [the officer] did not even have to leave his van, which was parked in the alley, to retrieve the garbage.

*Id.* at 589 (citation omitted). Accessibility to the public was likewise the focus of the Seventh Circuit's trash decision in *United States v. Hedrick*, 922 F.2d 396 (7th Cir. 1991). In *Hedrick* there was no dispute the trash searched without a warrant was placed for collection in a spot within the curtilage. *Id.* at 397. The trash was left for collection halfway up the driveway, closer to the sidewalk than the garage. The court decided that even though the trash was within the curtilage, the defendant had no expectation of privacy. It noted "the mere intonation of curtilage...does not end the inquiry..." *Id.* at 400. Because the trash was readily accessible from the street and because of the "common practice of scavengers, snoops and other members of the public" to sort through trash, the defendant's expectation of privacy was not reasonable. "In other words, garbage placed where it is not only accessible to the public but likely to be viewed by the public is 'knowingly exposed' to the public for Fourth Amendment purposes." *Id.*

The Eleventh Circuit decided trash left at the side of the garage likewise was entitled to no Fourth Amendment protection. *United States v. Segura-Baltazar*, 448 F.3d 1281 (11th Cir. 2006). Unlike the Seventh Circuit, however, the Eleventh Circuit declined to decide whether the trash was inside or outside the curtilage. The court noted whether trash is significantly exposed to the public to render an expectation of privacy objectively unreasonably is a fact-intensive inquiry and courts should not be faulted for considering curtilage as part of the inquiry. "We simply observe that the curtilage determination has no talismanic significance in concluding whether the government has violated the Fourth Amendment by rummaging through someone's garbage." *Id.* at 1287, n.1. *Segura* found the garbage left next to the garage was not protected by the Fourth Amendment because "it was left in a location where the sanitation workers regularly would, on Wednesdays, remove it along with trash left by the street; indeed nothing was done to prevent the removal of the garbage; and the garbage remained within the public view."

Also relevant to McGuire's expectation of privacy in the trash bins is that the area where his trash was deposited was shared with his landlord and another tenant.[4] "Those circuits that have considered the issue of whether a person has a legitimate expectation of privacy in trash placed for collection in a public area, in close proximity to a public way, or in an outdoor communal trash container serving an apartment building, have consistently denied Fourth Amendment relief." *United States v. Michaels*, 726 F.2d 1307, 1312 (8th Cir. 1984). *See also United States v. Redmon*, 138 F.3d 1109, 1114 (7th Cir. 1998) (no reasonable expectation of privacy in trash placed in front of garage in town home's common driveway); *United States v. Jackson*, 2013 WL 4509812 (4th Cir.) (no reasonable expectation of privacy in trash can located in sidewalk area of apartment building).

McGuire asserts he maintained a reasonable expectation of privacy in his trash because it was within his curtilage, not near the curb, sitting in a trash can, secured by a wooden structure next to his garage, and was not readily accessible to the public. *See* McGuire's Brief, Doc. 25 at p. 5. The Court's fact intensive review of the evidence including the testimony considered during the

---

[4]Parham testified that during the particular week when the trash pulls occurred, the other side of the duplex was empty. He explained, however, that he entered the yard to use his storage shed without notice or permission to his renters and had free access to the trash bins while on the premises. Parham's testimony was credible and uncontested.

evidentiary hearing and the photos entered into evidence, however, belies these claims.

The flimsy wooden structure holding the trash cans was placed by Parham, not McGuire and its purpose was to prevent the cans from blowing away, not to conceal the trash from the public. Similarly, the purpose for rope holding the can lids was to prevent the lids from becoming permanently separated from the cans–not to from prevent the cans from being opened. Most importantly, though, the trash cans were visible and accessible to many people other than McGuire. The cans,[5] as they sat outside waiting for trash day to arrive, could not even be seen from McGuire's front door or any of the windows of his duplex or garage. On the other hand, they were located mere inches from the neighbor's driveway, only a few paces from the public street, and were (usually) accessible by McGuire's co-tenants and landlord. They were clearly visible and easily accessible from the neighbor's driveway, the public sidewalk and the public street. *See* EX 4-10. His trash was "readily accessible to animals, children, scavengers, snoops and other members of the public." *California v. Greenwood*, 486 U.S. 35, 40-41, 108 S.Ct. 1625, 1629, 100 L.Ed.2d 30 (1988). For all of these reasons, McGuire had no reasonable expectation of privacy in the trash that was seized during the trash pulls conducted by law enforcement on October 16 and October 23, 2012.

### 3. The Effect of the Trespass

Both Detective Matia and Officer Duprey readily admitted they trespassed onto the neighbor's property and briefly onto McGuire's rental property to retrieve McGuire's trash. McGuire's final argument is that the officers' admitted trespass deems the trash searches illegal.

In this section of his brief, McGuire asserts that the officers' trespass in order to reach his trash, renders this an "easy case" based on *United States v. Jones*, 132 S.Ct. 945, 181 L.Ed.2d 911 (2012) and *Florida v. Jardines* 133 S.Ct. 1409, 195 L.Ed.2d 495 (2013). Both recent Supreme Court cases interpreted the Fourth Amendment to determine what constitutes a Fourth Amendment search. In *Jones* the specific issue was whether installation of a GPS on a vehicle (an 'effect' under the

---

[5]McGuire gained no increased expectation of privacy by merely placing the trash bags into cans. "A person must do more than place trash for collection in a trash can, that the public has access to, to create an objectively reasonable expectation of privacy." *United States v. Trice*, 864 F.2d 1421, 1424 (8th Cir. 1988).

Fourth Amendment') constituted a search. In *Jardines* the issue was whether a drug dog sniffing for drugs on the inside of a house from its front porch amounted to a Fourth Amendment search. The Supreme Court answered both questions affirmatively.

The Fourth Amendment provides "[t]he right of people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated." In *Jones* the Supreme Court explained that the "reasonable expectation of privacy" formulation of Fourth Amendment protection as articulated in *Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.576 (1967) was meant to add to, not provide a substitute for, the common law trespassory analysis. *Jones*, 132 S.Ct. at 952. The Court reiterated this theme in *Jardines:*

> The Fourth Amendment provides in relevant part that the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.' The Amendment establishes a simple baseline, one that for much of our history formed the exclusive basis for its protections: When the Government obtains information by physically intruding on persons houses, papers, or effects, a search within the original meaning of the Fourth Amendment has undoubtedly occurred. By reason of our decision in *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.576 (1967), property rights are not the sole measure of Fourth Amendment violations, –but though *Katz* may add to the baseline, it does not subtract anything from the Amendment's protections when the Government *does* engage in a physical intrusion of a constitutionally protected area.'

*Jardines*, 133 S.Ct. at 1414 (citations omitted, punctuation altered). In *Jardines* the Supreme Court found a Fourth Amendment violation because the drug dog sniff occurred on the front porch-- clearly within the curtilage.

> [The curtilage] enjoys protection as part of the home itself . . . when it comes to the Fourth Amendment, the home is first among equals. At the Amendment's very core stands the right of a man to retreat into his own home and there be free from Governmental intrusion. This right would be of little practical value if the State's agents could stand in a home's porch or side garden and trawl for evidence with impunity; the right to retreat would be significantly diminished if the police could enter a man's property to observe his repose from just outside the front window.

> We therefore regard the area immediately surrounding and associated with the home–what our cases call the curtilage–as part of the home itself for Fourth Amendment purposes. That principle has ancient and durable roots. Just as the distinction between the home and the open fields is as old as the common law, so too is the identity of home and what Blackstone called the curtilage or homestall, for the house protects the privileges and all its branches and appurtenants. This area around

13

> the home is intimately linked to the home, both physically and psychologically, and is where privacy expectations are most heightened.
>
> While the boundaries of the curtilage are generally clearly marked, the conception defining the curtilage is at any rate familiar enough that it is easily understood from our daily experience. Here there is no doubt that the officers entered it: The front porch is the classic exemplar of an area adjacent to the home and to which the activity of home life extends.

*Id.* at 1414. It is unclear whether, when it decided *Jones* and *Jardines*, the Supreme Court intended to alter its *Greenwood* Fourth Amendment trash analysis. Recall that in *Greenwood* although the Court initially mentioned the trash was <u>outside</u> the curtilage, the analysis focused primarily on whether the defendant's expectation of privacy in his trash was reasonable.

The answer may lie in the *Jardines* Court's emphasis on the proper view of the constitutional inquiry: The *Katz* reasonable expectation of privacy theory adds to, but does not subtract from the property based Fourth Amendment analysis. In other words, under *Jardines* if the trash is within the constitutionally protected area commonly known as the curtilage--(contrary to the interpretation of *Greenwood* espoused by *Comeaux, Segura* and *Hedrick*)-- the Fourth Amendment inquiry ends; a warrantless search and a constitutional violation have occurred.

Because the officers trespassed onto both the neighbor's and McGuire's driveway to snatch McGuire's trash, though, did they likewise step upon McGuire's curtilage and violate the Fourth Amendment? Not necessarily. *See e.g. United States v. Mathias*, 721 F.3d 952 (8th Cir. 2013).

"Curtilage is the area to which extends the intimate activity associated with the sanctity of a man's home and the privacies of life." *Oliver v. United States*, 466 U.S. 170, 180, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984). Four factors are considered to determine whether an area falls within the home's curtilage: (1) the proximity of the area to the home; (2) inclusion of the area within an enclosure surrounding the home; (3) the nature of the uses of the area; and (4) steps taken by the resident to protect the area from observation by persons passing by. *United States v. Dunn*, 480 U.S. 294, 301, 107 S.Ct. 1134, 1139, 94 L.Ed. 2d 326 (1987). The *Dunn* factors are tools to help courts determine the "centrally relevant consideration–whether the area in question is so intimately tied to

the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection." *Id.,* 480 U.S. at 301, 107 S.Ct. at 1140.

If McGuire's trash was not within the curtilage of his half of the duplex, the officers committed no Fourth Amendment violation. To determine whether McGuire's trash was within the curtilage, the *Dunn* factors should be not be applied mechanically or in isolation. *United States v. Bausby,* 720 F.3d 652, 656 (8th Cir. 2013). In *Bausby,* ( a post-*Jardines* case) the police entered the defendant's fenced front yard without his permission to inspect a motorcycle they suspected was stolen. The Eighth Circuit determined the fenced yard was not within the curtilage even though it was within close proximity to the home and was enclosed by the fence. "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." It was important in *Bausby* that the fence did not limit the observation of the motorcycle by people passing by. *Id.*

More on point although it was decided long before *Jardines* is *United States v. Long,* 176 F.3d 1304 (10th Cir. 1999). *Long* was, as this case is, a trash case. In *Long* the defendant also rented his home, which had an attached garage. The trash seized by the officers was sitting in a trailer in the back yard, behind the attached garage. The trailer was the usual place the trash was placed for pickup by the garbage hauler. In order to reach the trailer, the officers were required to walk onto the back yard from the alley which ran behind the rental home. *Id.* at 1307. The Tenth Circuit applied the *Dunn* factors and found the officers did not violate the Fourth Amendment because the trash was outside the curtilage. Important to the determination was that the defendant made no showing the area from where the trash was taken was used for an activity associated with the intimate activity associated with the sanctity of the home. *Id.* at 1308. "Indeed, it is difficult to imagine anyone using an area which garbage was regularly deposited for the intimate activities of the home." *Id.*

McGuire's trash was (1) close to the side of his garage; (2) not in an enclosure surrounding the duplex; (3) the area was used to store the his trash and the trash of the other tenants–when there were other tenants-, as well as his landlord's trash, and was immediately adjacent to his neighbor's

driveway; and (4) McGuire took no steps to protect the area from observation by the public. It was visible from the neighbor's driveway and home as well as from the public street and sidewalk. And, as in *Long*, there was no evidence presented that the side of McGuire's garage where the trash cans were stored – was "so intimately tied to the home itself that it should be placed under the home's umbrella of Fourth Amendment protection." *Dunn*, 480 U.S. at 301, 107 S.Ct. at 1140. McGuire's trash was not within the curtilage. The officers did not, therefore, violate the Fourth Amendment when they stepped onto McGuire's driveway to retrieve his trash.

### 4. The *Leon* Good Faith Exception

An analysis of the good faith exception is necessary in the event reviewing courts disagree that the search warrant was valid. Ordinarily, "evidence obtained in violation of the Fourth Amendment is subject to the exclusionary rule and, therefore, cannot be used in a criminal proceeding against the victim of the illegal search and seizure." *United States v. Cannon*, 703 F.3d 407, 412 (8th Cir. 2013 ) (citations omitted). Because exclusion is a prophylactic remedy, however, there are some exceptions to the rule. *Id.* The *Leon* good faith rule is one such exception.

Under *United States v. Leon*, 468 U.S. 897, 920-21, 104 S.Ct. 4305, 82 L.Ed.2d (677 (1984) evidence obtained pursuant to a warrant is not excluded "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope" even if the warrant is subsequently invalidated. Unless the magistrate judge abandoned his or her neutral and detached role, suppression is appropriate only if the officers were dishonest or reckless in preparing the supporting affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause. *Id.* 468 U.S. at 926, 104 S.Ct. at 3405.

In *Cannon*, the Eighth Circuit explained the *Leon* good faith exception in circumstances where (as here) the defendant alleges the the search warrant application cited information gathered as a result of an illegal search and information was recklessly omitted from the affidavit:

> We have applied *Leon* where, as here, the search warrant application cites information gathered in violation of the Fourth Amendment. Evidence seized pursuant to a warrant, even if in fact obtained in violation of the Fourth Amendment, is not subject to the exclusionary rule if an objectively reasonable officer could have

16

believed the seizure was valid. For the *Leon* exception to apply when the warrant is based on evidence obtained through a Fourth Amendment violation, the detective's prewarrant conduct must have been 'close enough to the line of validity to make the officers' belief in the validity of the warrant objectively reasonable.' *United States v. Conner*, 127 F.3d 663, 667 (8th Cir. 1997). If 'the officers' prewarrant conduct is clearly illegal, the good faith exception does not apply.' *Id.*

*Cannon, Id.* at 413 (other citations omitted, punctuation altered).

In this case, McGuire asserts the officers violated his Fourth Amendment rights because they trespassed upon his property to retrieve his trash. McGuire claims Matia recklessly disregarded the truth because Detective Matia failed to advise the issuing judge that the trash cans were located on his private property on the driveway, next to the garage.[6]

The trash pulls occurred on October 16 and October 23, 2012. It remains unclear whether either of the Supreme Court cases upon which McGuire relies ( *United States v. Jones*, 132 S.Ct. 945, 181 L.Ed.2d 911 (2012) and *Florida v. Jardines* 133 S.Ct. 1409, 195 L.Ed.2d 495 (2013)) intended to alter the law of trash pulls as set forth in *Greenwood*. *Jones* was decided before McGuire's trash pulls occurred and *Jardines* was decided afterwards. McGuire opines *Jones* and *Jardines* establish that a trespass upon private property *automatically* creates a Fourth Amendment violation, but those two cases do not address trash pulls at all. *California v. Greenwood*, 486 U.S. 35, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988) and *United States v. Comeaux*, 955 F.2d 586 (8th Cir. 1992) remained the definitive trash cases from which the officers could take guidance. Neither emphasize that trash cannot not be removed without a warrant if removal requires the officers to trespass on private property. Instead, the emphasis in both cases is whether placement of the trash merits a reasonable expectation of privacy. For the reasons already explained in previous sections of this Report and Recommendation, McGuire did not have a reasonable expectation of privacy in his trash.

---

[6]The undersigned does not agree with McGuire's premise. Even after the two Supreme Court decisions upon which McGuire relies ( *United States v. Jones*, 132 S.Ct. 945, 181 L.Ed.2d 911 (2012) and *Florida v. Jardines* 133 S.Ct. 1409, 195 L.Ed.2d 495 (2013)), the Eighth Circuit decided that warrantless, trespassory entry into the fenced front yard of a home to inspect its contents did not constitute a violation of the Fourth Amendment. *United States v. Bausby*, 720 F.3d 652, 656 (8th Cir. 2013).

17

Because (1) an objectively reasonable officer could have believed the seizure of McGuire's trash was valid; (2) the officers' conduct was close enough to the line of validity to make their belief in the validity of the warrant objectively reasonable; and (3) the officers' conduct was not clearly illegal; the *Leon* good faith exception applies, even if the warrant is ultimately deemed invalid.

## CONCLUSION and RECOMMENDATION

For the reasons more fully explained above, it is respectfully RECOMMENDED to the District Court that Defendant's Motion to Suppress (Doc. 24) be DENIED.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court.

*Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990)

*Nash v. Black*, 781 F.2d 665 (8th Cir. 1986)

Dated this __1__ day of ~~September~~ Oct, 2013.

BY THE COURT:

_____
John E. Simko
United States Magistrate Judge